I hope to say you could cut through some of the procedural tangles in this case by declining to extend dynamic drug wear. That option has likely been taken off the table, absent in bank review. Still, this panel can and should correct PTO's errors in applying dynamic drink wear, and otherwise avoiding the substance of Ariosa's challenges to the 794 patent. The final written decision in this case was the first ever to extend the rule that was applied to this area. Now it's a new issue, a new legal standard. And indeed, before the record closed, Illumina itself had argued only that the provisional patent application needed to support the subject matter relied upon in the published patent application. They hadn't argued that there needed to be support for the claims. Now, once this new rule was announced in the final written decision, the board should reopen the record and consider all the evidence that Ariosa presented to meet that standard. Alternatively, if there wasn't a new standard here, then it should have held Illumina to its waiver under this court's decision in Giacomini. What the board couldn't do, and what it did here, is fault Ariosa for not building a record on an argument that Illumina wasn't making before the record closed. Now, you may be thinking to yourself, well, there was some discussion of the additional evidence in the sense that the board, in its decision-denying hearing, discussed the evidence relating to claim one of the FAN publication. But one of the difficulties we have under the extension of dynamic drinkware in this trial within a trial that's created is that if any claim of the FAN publication is supported by the written description in the provisional application, then that priority link has been established. And the FAN publication is priority for everything that has been carried over from that earlier application. And so the board needed to address all of the evidence that had been presented, which included detailed claim charts, not just about claim one in the FAN publication, but about all of the other claims. So we have just a failure to address the evidence and arguments that were presented to it. And I think a misunderstanding on the part of the board when claim one was picked out as an example, the argument that Arioso was making was that as described in exhibits, which had already been made and rendered by Illumina, all of the claims of the FAN publication were supported by the provisional application. You should reopen the record and consider this evidence. And it's not a complete response or analysis for the board to look at one piece of that and then to have no discussion whatsoever of all of the other claims. And then the other piece of its analysis, which was to say, well, none of this is a new rule. The implications of that then bend back against Illumina, because if none of this was a new rule, the fact that it was making the argument that is the legal standard we are advocating for, or were advocating for, before the record closed would say that there is a waiver on its part, as this court found in Giacomini, when no argument was being made there. In addition to this impossibility of saying it's new, but it's not new at the same time, the board also committed a legal error in analyzing the shifting burdens of production under Dynamic Dribbleware, in that it faulted Ariosa for not contending in its petition that Illumina had no entitlement to its earlier priorities. But that gets things backwards. Under the burdens of production, our burden was to come forward and say, we're offering the fan publication here, it's 102e art, we identified their filing date in 2002, fan publication on its face has a filing date of 2001, and then if there's going to be any establishment of an earlier priority date on their part, they have the burden of production under Dynamic Drinkware, under Technology Licensing, under Power Oasis, to do that analysis and say, no, we have a 2002 filing date for the application that immediately leads to our patent, but here are the reasons why we're claiming an earlier priority date, at which point the burden would have shifted back to us. So to say that we had an initial upfront burden to say, as the board said, petitioner did not argue that the 794 patent was not entitled to its earliest possible effective filing date of September 2001. There wasn't a duty on our part up front to be pre-budding what they were going to say when the burden of production shifted them. So we think this is a very straightforward legal error in the analysis that would also warrant remand to the board. And the other piece of it is reasoning on that in terms of discussing whether we had identified the FAN publication as 102E part. We clearly had, and you don't need to look any farther than the board's institution decision. We even gave you the screenshot in our brief so you could see that the board was instituting on 102E as well. And if you look at the Patent Owner Response here, clearly Illumina understood that and it was addressing the filing date of the FAN publication itself as well as the issue of getting back to the earlier filing date of the provisional. So what we're presenting to you here now that we have the adverse precedent against us on what had been our lead argument was the series of legal errors and positions that are either not being fully addressed or positions being taken by the agency where you're adopting two contradictory views simultaneously or a clear legal error in shifting the burden of proof onto our client inappropriately. And the effect of all of these was to leave us in a position where there is no consideration of the substance of our challenge. What we've wanted all along here was the opportunity to have the prior art compared to the claims of the 794 patent. And the board there has gone to tremendous lengths through these procedural rulings to not consider that substance. And those links extended even after the final decision here where we had a termination decision for the ex parte re-examinations. Which I think was striking in the sense that you had grounds that had been not instituted initially in the IPR on the ground that they were redundant to FAN. And then at the time that the determination decision is being made, the board has already knocked FAN out of the case. And so what it's doing is it's terminating an ex parte re-examination that the central re-examination unit had found presented substantial new questions of patentability on a ground that it hadn't considered up front as redundant. But by the time it's making its decision, there of course is nothing left to that redundancy determination based on having knocked FAN out of the case. You also have sort of sweeping reasoning by the board if you look at the Schuber reference that was offered as well. That was not instituted in the Roche IPR, again on the grounds of redundancy. And then there's a termination of the attempt to have the PTO consider that. And then on Strauss, you have an initial determination that says, well, even though this is a continuation application, so by definition, nothing has changed here. You needed to attach the parent application. That wasn't attached. It's a publicly available document. We, the board, have cited it. Illumina has cited it. But on this technicality, you didn't attach it. And so then every effort is made to say, let's have substantive consideration of that in Roche attempted in its IPR. And they attempted in the ex parte re-examinations. And these were instituted. Substantial new questions of patentability were found. But the board's reasoning was essentially that that upfront issue couldn't be corrected here. They're citing the timing of this and saying, well, you needed to go back to that point in time and show us why you could have. We think that this sweeps far beyond the purpose of this provision, which, as you'll recall, on the face of the statute, applies only, quote, during the pendency of the IPR. And so there's a reasoning that says, essentially, if there's a gap between your first request and these later ex parte re-examinations, then we can say you could have brought this earlier and knock out those ex parte re-examinations. But to have that sweeping reasoning, which would essentially allow the board to knock these out under any circumstances, makes no sense when mapped onto a statute that provides this authority only for a limited period of time during the IPR. And what that tells you is that this is authority that goes to avoiding duplication. It's preventing the train wreck when all these proceedings are going at once. It's not a general authority to announce a standard that says if it wasn't in the initial IPR petition, then we won't entertain it in the ex parte re-examination context as well. So we think that that is a continuation of the legal errors and the abuses that were being made by the board that all amount to one thing, which is no substantive consideration in these proceedings of the arguments that we're making no comparison of the disclosures in the 810 provisional and the other prior art that we've offered to the claims of the patent, other than, of course, in institution decisions that found a substantial likelihood of cess and in the ex parte re-examination orders, which found 18 substantial new questions of patentability. There are a lot of issues in this case, so if the panel doesn't have other questions at this time, then I'll reserve my time for them. Thank you, Mr. Saunders. Mr. Hickman. In the very next sentence, it says where there are differences, or where there are differences between the two. And we submit the board correctly read that as saying differences are not. May it please the court. I'm here this morning to address the reviewability of Arios' appeal of the board's decision to terminate the ex parte re-examinations. And for as long as the USPTO has been conducting post-grant proceedings, the rule has been that the agency's decision not to have a proceeding is not reviewable in an article free court. That's been the case for ex parte re-examinations. That's been the case for inter partes re-examinations. It's been the case for inter partes reviews and for interferences. And this case is no different. We know that's the answer because we can see that in the statute. And so I'll briefly this morning recap what the statute says. Sections 134B and 141B, which govern appeals from ex parte re-examinations to the board and to this court, make clear that only patent owners can take appeal from a rejection of the examiner. And the appeal that's taken must be from a final rejection that the examiner entered. That was the landscape before the America Invents Act. And nothing in the AIA changed that. The landscape before the America Invents Act was also clear from the re-examination statute itself, sections 302 through 306 of the Patent Act. And those sections also made clear that, again, the patent owner is the party who has the right to appeal. Section 306 specifically says that a patent owner may appeal under section 134 to the board. The syntax case, which is an old case, addresses those sections of the ex parte re-examination statute and fully supports the same result here. In the America Invents Act, what Congress said is, in sections 315D and the second sentence of section 325D, Congress envisioned that there may be parallel proceedings, such as the scenario that we have here. And what Congress said is that the agency can figure out what to do in the event of parallel proceedings. The director delegated authority to the board to determine, ultimately, what to do in a situation like this. And the board exercised that authority and assessed all the relevant considerations and concluded that the ex parte re-examinations should not go forward. So I think the statutory scheme is clear here. And so unless the court has any specific questions, I'll simply yield the rest of my time. I have one question. You refer in your brief to this as a jurisdictional issue? Yes, sir. As opposed to an issue, let's say, of standing or, for lack of a better term, appealability or cause of action. Why do you think of it as jurisdictional? Well, our brief said that it's really both about jurisdiction and it's about having a cause of action to appeal. And the Supreme Court, certainly in recent years, has made clear that those are actually jurisdiction and standing and having a cause of action are distinct concepts. Which category do you think this one falls in? Both jurisdiction and having a cause of action. And to more directly answer your Honor's question, we know that because we can see that in the statute. The statute, both sections 141 and 134, speak to this court's jurisdiction as an Article III court to review certain types of appeals from ex parte re-examination decisions, certain matters that come out of those. So I would say that 134 and 141 speak to what this court can do. If you look to- As opposed to this court having the authority to do that, but only at the behest of certain parties. Would you consider both of those to be jurisdictional? I would. I think Congress was speaking to the same concept with both of those. But I think on the second point about which parties can bring the appeal, I think that's also relevant to having a cause of action. But you think it is jurisdictional in addition to being a cause of action issue? I do. And for the reasons that I just stated, that Congress did speak to, in certain situations, an Article III court can adjudicate certain appeals, certain matters that come out of proceedings before the agency in some cases. So unless there are any further questions, I'll sit down. Thank you, Mr. Hickman. My friend spoke at one point about if there's not an appropriation by reference, at a minimum, the 817 application. Thank you, Your Honor. And may it please the court, Edward Reines on behalf of Illumina. The first point of error that was identified by Appellant was, as I understood the argument, was that the rehearing request should have been granted. And that it was legal error not to do so. And what I think the fundamental flaw there is, there is a conflation of the concept of a precedent on a question that interprets a statute where there's never been a controlling ruling by a court versus a reversal of a controlling ruling of law. In their rehearing petition, they identified the Hatch case, which says that an agency must provide an opportunity to meet a legal standard where there's a reversal of a controlling issue of law that's existed. And they didn't meet that standard. And I don't think anyone here thinks they can because they also cited, for example, a dynamic drink where the district court judge that said, I mean, excuse me, in the Amgen case, the district court judge said, this is a first issue of first impression. So they embraced the concept that no one had expressly stated that Section 119 should be interpreted the way this court has interpreted it recently in the Amgen case and drink where and so forth. So that threshold question of whether there was a change in law sufficient to warrant a rehearing petition, they didn't meet the own standard that they set forth in the petition. So that alone should be sufficient. The second aspect of the complaint on the rehearing petition, as I understood it, was that they tendered an offer of proof that they could meet the standard of the Amgen by showing entitlement to the filing date of the 810 properly under Section 119. And with respect to that, they identified only one claim, which was claim one, the board, to its credit. I mean, the shirking workload, I don't think is a fair implication, which is what we're getting from the argument. They spent pages going through claim one of the 946 non-provisional application to show that it wasn't supported by the earlier 810 application. And they said, that's the one you've identified. It was the only one identified in the record. They weren't going to start fishing around for other claims to test that, especially when the threshold showing hadn't even been made that there was a change in controlling law sufficient to warrant the kind of evidence that they received. It was a little unclear to me, and straighten me out on this, but you're right, as far as I can tell. They only specifically argued claim one, but they attached other claims to their submission. And help me understand the relationship between those other claims, as far as their argument went, and the argument they were making with respect to claim one. So the argument was different because the inventions were somewhat different. And with respect to claim seven, which is the one that they're championing now on appeal, which was just one of many. But it was included, was it not, with the package that they presented to the board at the re-hearing? Only in the sense that this was included in this appeal. I mean, it was a record piece of evidence. You know, under 37 CFR 42-104-B5, they have an obligation to specify each piece of evidence and explain why it's relevant. It wasn't any more specific than that, that it was just this happened to be one of the claims that was found somewhere in the record. It wasn't, there wasn't more? No, I mean, they cited documents where they made showing expert reports and things from other proceedings. But they didn't develop the argument. There was one sentence that said, for example, claim one meets it. And then they attached as an appendix to the re-hearing petition the claim chart for claim one. So when you get a brief, it would have been, for example, claim one. And then it would have been an addendum that had the claim chart. And then you would have had to go and look at the district court briefing or whatever and figure it out. I mean, on a re-hearing petition, especially in view of the rule 42.104B5, I mean, that's just asking way too much. They did pages of technical analysis as to why even the argument that was highlighted failed. And I think that was just a true attempt by the board to make sure that they felt like they were getting a fair shake. Look, we don't think the law changed. Everyone's responsible for knowing what the statutes mean. Just because an issue hasn't been directly addressed by this court doesn't mean people aren't responsible for knowing what the statute means. And we're going to look, nonetheless, at what you've highlighted as your example, which you've included with the petition, and see if it's meritorious. And we find that it's not. We're not going to go dig through and see if other ones might be. I think on a discretionary motion, like a motion for reconsideration, that's more than adequate to carry the day in this appellate review court. So that's the primary argument, as I understood it. There's an argument regarding the burden. And here, really, two main thrusts. It's been a long morning for you. I don't want to protract it. And if at any point I'm sort of doing that, let me know. But the first point is the petition was incredibly superficial in terms of what the theory of prior art was. I mean, incredibly. They listed five prior art references. And then they said, these are prior art under 102A, 102B, and or 102E. And didn't specify any subsection with any of the five references. And their argument now is that they intended to say the 946 filing date was the effective filing date for purposes of their prior art reference. They didn't mention the date. And again, that violates, I think, 42-104-B-5. You have to say what's relevant for what. I mean, we've had to respond. You're limited in pages. And it's sort of like, they're arguing that five different references. So they didn't carry the day, but lest there be any question about it. Because in just going back through, it's one of those things you read back through and you think, is there a real clear way to demonstrate this in a very short time span to attentive audience? In the appendix at 741, the judge at the trial said, is there anything on the part of petitioner that petitioner has tried to show what the effective filing date is? And the answer was, there's a longer answer up front. They basically said, well, our effective filing date's the 8-10 application, which is February 2000. That really was their position. It's a revisionist history that it was the 9-4-6 later filing date. And it states in simple terms, so our position is that we are well ahead of the earliest filing date of the 794 patent by reference to the priority date of the 8-10. The judge said, so what's your position on the earliest filing date? And it said, we're going with the earliest filing date of the 8-10, which would have required a dynamic drink where Amgen proof to get them back. It wasn't that they were relying on the 9-4-6 and that we'd somehow failed to predate it by virtue of showing our entitlement to priority. And then this went on, because the board was interested. And the board basically said things at 743, you acknowledge that date, and you never challenged any of the claims not entitled to that date. So you acknowledged the early date. Now, which date? The early date of the 794, the patent that's being challenged. The September 2000? Right. Right, OK. All right. You acknowledge that date, and you never challenge it. And Mr. Gunther answered, and it's long, I don't mean to take it, consider it a whole thing, but it sums up with, I mean, at one point he said, I think it's fair to say that in anticipation of the section of the petition, we didn't make that argument. But then at the bottom of 744, at lines 20 through 24, and our position is that we don't have to do that at all, which is challenge the date of our priority to September 2000 as a result of the incorporation by reference. Because they have February 2000. Right. They don't as a result of the incorporation by reference. That's not counted in any way. Right, but that's the argument, is they have February, they don't have to worry about September. Right. The 810 disclosure in its entirety becomes part of the 946, and we can rely on that as the priority date, the February 2000 priority date. The judge is asking them, what's your position on this priority date question? And then at page 780, because the board's been challenged here in a way that I'm not sure doesn't deserve response. Page 780, Judge Yang says at lines 21 through 23, again, if I understood counsel for petitioner correctly, I thought he was saying that he didn't need to, except for the four claims. They didn't need to do all that because they could trace back to the 810 application. And then counsel for the petitioner stood up and had a rebuttal, and they didn't mention it. They didn't correct the impression of the board, which the first place, they were just sitting on the 810 earlier application. So they confirmed, not only was the petition didn't specify any challenge to the 794 patent, and I'm sure having reviewed the record, you're aware of this, but they were just describing the state of the art, and they were using the effective filing date of the 794, the September 2000, as the relevant priority because they were embracing it in the petition. But they confirmed the trial upon questioning of the judges that that was their theory. How could we fault that board for then accepting that that was the theory that they were being presented with? In terms of what our response was, we didn't hear the waiver argument, I don't believe, here today, but that we somehow waived. We were very specific in the patent owner's response that they did nothing to challenge our earlier priority date, and they just had no viable 102E theory. We didn't waive anything, and that was point blank. So the burden shifting, I think that's a deferential standard, but clearly the board had good reason for what they did, and I think faulting them is shirking work or whatever it is is not well taken. On termination, unless there's any questions on the 794 of a final written decision, I'll move to that. On the termination, the question as to what's the exact flaw, it's actually an interesting question. I think it's both lack of what we would call a cause of action or one might think of as standing and the jurisdictional question. I think what's interesting about this, actually, is that under 325D, 325D doesn't say, as part of an IPR, you may consider what you want to do with other applications. It's a far broader and more flexible allowance of authority. What it says is the director can figure out how to handle all of this. So it's not, I don't think, per se, part of the petition. It gets into a little nebulous, admittedly, but I don't think it's part of the actual IPR proceeding itself, per se, because the director could identify someone else, a different component of the PTO, to make this decision. OK, we've got the inventors challenging their own patent, and they've challenged it six different times in three different audiences. How do we deal with this, which is the question presented. And what they did is the director said, we'll have the PTAB do it. Now, here, that makes sense. The PTAB just went through a full trial, all this briefing. We went through that already. For them to determine whether a subsequent re-examination is duplicative and is fair, given the time lapse and everything else, they were the right, you know, just I'm saying if I was making the decision, I would say, yeah, that PTAB should make that decision. And they did. That doesn't make it part of the IPR proceeding, per se. So I think when you look at it in that light, that clarifies that there's not appellate jurisdiction, because the only appellate jurisdiction coming out of the IPR is rather narrowly drawn, as this panel knows better than me, which is under 319, that it's just the final written decision. Well, that hardly would go to something like this, which adding legal buzzwords, you know, might be considered collateral or a separate authority, which is the 325D authority. In terms of the merits of the termination of the ex parte, well, on behalf of my client, I couldn't think it was more deserved. I mean, we had just, we still have them. We're going to trial. It's at least interesting to me that you are going to trial in a few weeks on this case. So they have their counterclaims. And this is the case where there was a really narrow estoppel, like an incredibly narrow estoppel. We sought a petition from that. And that was denied as, well, we can deal with it later. We don't need the mandates. But with respect to that, they have the invalidity claim based on prior art that they're still going to be pursuing. And they had the opportunity in the petition. So they've had more than ample opportunity. And with that, we'd ask, it wouldn't be fair if I didn't say, I think that asking for estoppel, not applying to PTAP proceedings is a problem that just analytically it's hard for me to support. And so I think that you should consider that as appropriate in the course of these proceedings. Thank you. OK. Mr. Saunders, you have some rebuttal time. I'd like to start with the question of not reopening the record. The one I would dispute, we cited the Hatch case from the DC Circuit. But if you look at the underlying cases that are collected in there, not every one of those cases is dealing with the controlling standard, the true binding precedent that can't be gotten around. But even if that were the standard, the point we were making is that the PTO itself had said that the logic here doesn't carry over to publish patent applications. It said that in its Robbins decision. And it said that in its Yamaguchi decision, which was a precedential decision of the BPAI. BPAI is still precedent for the board. If you go on the board's website today, you'll see that they list this as a precedential decision. And in Yamaguchi, they went through an extended analysis as to why the logic of Wertheim wouldn't extend to a situation in which Congress has made the prior art reference a published patent application. So the logic of Wertheim talking about needing to be a but for the delays of the patent office, you'd have a patent issue, just doesn't map on to prior art where there doesn't have to be issuance. We're talking about the unexamined claims of that reference. And so Yamaguchi had gone on in this precedential decision for page after page saying that the statutory requirement of Title 35 to publish 18 months after the filing date displaces in most cases applying the secret prior art rationale in Henry Wertheim. Even assuming that Wertheim's but for test remains viable for the narrow class of unpublished applications analogous to those at issue in that case, applying Wertheim to all other applications requires a strained reading of the statute and precedent to address a misplaced concern about secret prior art and concern that simply no longer applies to these publicly available applications. So when dynamic drinkware was decided after the record had closed in this case, and when Illumina had never once, the entire time before the record, was arguing our position as to what had to be supported, you can see this in appendix 352 and 353, at that point it's decided we have supplemental briefing on dynamic drinkware. And we make the point that under Yamaguchi and the board's other cases, it doesn't extend to this new context. And then in addition, we point out this is not what they've been arguing the whole time. And we say specifically in there that had they argued it, we could have made this showing of support. The board then goes ahead in its final written decision. And the first decision ever saying that notwithstanding Yamaguchi, notwithstanding Robbins, notwithstanding Senator Kyle's understanding of this, that we are going to say that the unexamined claims of a published patent application are the critical thing that needs to be supported here, even if the relevant disclosure and validating disclosure has been carried over. Once they do that, we then come back to the board and say that, well, normally in these circumstances when you have a new standard applied against you, you wouldn't have anything to point to. You'd be able to say, OK, you've applied a new standard, reopen the record, because we'd like to build a record under that new standard. In this case, it happened to be that some of the information from the reexaminations had been put into the record. And so on page 903 of the appendix, we asked the board to consider all of that. We said, as described in Exhibits 2050 and 2053, all of the claims of FAN are supported under Section 112 by the 810 application. The board, in fairness, should consider that evidence. And then it was reiterated, coming back in our reply in support of rehearing, to say, as well there, that every claim of FAN has Section 112 support in the 810 application. Now, within the limited pages of the rehearing petition, one example is plucked out of that. But the thrust of our argument was not, we want you to consider one example. The thrust of our argument is, well, now that we have a rule that requires this trial within a trial, now that we're not talking about, does the prior art anticipate their claims, but we're talking about whether these entirely different unprosecuted claims in FAN are supported, we want you to reopen the record and consider the evidence with respect to all of those claims. Because it would take just one of those claims being supported for that to be prior art for all that it teaches, as of its earliest effective priority date, which would include all of it as incorporated by reference here. And so the board, even under an abusive discretion standard, it's an abusive discretion to fail to address a critical argument like this. And so for the board not addressing that, we think that needs to be remanded. And if the way it was addressing it was by saying, no, no, this wasn't a new legal rule, then, as we said, that bends back on Illumina. And I don't think that the nature of our argument was saying we're incorporating arguments by reference. We're saying there's evidence out there. We want you to reopen the record to consider that. I don't think that's a circumstance. But if there are any evidence in question was exhibits 2050 and 2053? Correct. That's the body of evidence that pertains to this issue. That was the body of evidence that was already in the record that pertained to this issue. And certainly, the board, you have no ruling from the board. I mean, under Chenery, I don't think it's appropriate for this court to be substituting considerations about incorporation of arguments into rehearing petitions. That's not what the board said. It just addressed Claim 1 and was silent on all the others. As for the burden shifting, I think that there was discussion about the oral argument before the board. And it was pointing to appendix page 741. But if you look at that passage, that was the argument and the alternative. It says, even if they are entitled to these earlier dates, we have it earlier. That doesn't wash away the arguments that have been made before in the papers and doesn't mean that it's open season to shift the burden of production onto us. We didn't need to say anything at all about their priority date in our petition for them to have to carry the burden of production if they wanted to show an earlier priority date. But at what point, if at all, did you challenge the September 2000 priority date? The September 2000 priority date, once they said in their response that not doing an element analysis, but that they seemed to be indicating that they were reaching back. Now, they never said reaching back to September 2000. But we're reaching back to a February 2001 application. Then we, in our reply to that, once said, no, the disclosures that you're pointing to, you can only get back to August 2001 for that. And so we didn't have to say in our upfront paper, you're not entitled to the earliest thing you might claim until they had come forward and staked that earlier claim. OK. I thank all counsel for their arguments. The case is taken under submission.